1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

JULIO C. AGUILAR, JR.,

               Plaintiff,

      v.

CAROLYN W. COLVIN, Acting
Commissioner of Social Security,

             Defendant.

Case No. CV 15-977 JC

MEMORANDUM OPINION AND
ORDER OF REMAND

## I.   SUMMARY

On February 10, 2015, Julio C. Aguilar, Jr. ("plaintiff") filed a Complaint seeking review of the Commissioner of Social Security's denial of plaintiff's applications for benefits.  The parties have consented to proceed before the undersigned United States Magistrate Judge.

This matter is before the Court on the parties' cross motions for summary judgment, respectively ("Plaintiff's Motion") and ("Defendant's Motion").  The Court has taken both motions under submission without oral argument.  See Fed. R. Civ. P. 78; L.R. 7-15; February 11, 2015 Case Management Order ¶ 5.

1

1    Based on the record as a whole and the applicable law, the decision of the

2    Commissioner is REVERSED AND REMANDED for further proceedings

3    consistent with this Memorandum Opinion and Order of Remand.

4    **II.    BACKGROUND AND SUMMARY OF ADMINISTRATIVE**

5         **DECISION**

6         On June 13, 2011, plaintiff filed applications for Supplemental Security

7    Income and Disability Insurance Benefits.  (Administrative Record ("AR") 203,

8    207).  Plaintiff asserted that he became disabled on December 1, 2006, due to back

9    pain/lower extremities/lumbar spine, diabetes mellitus, anxiety, depression, and

10   fractured ankle.  (AR 249).  The Administrative Law Judge ("ALJ") examined the

11   medical record and heard testimony from plaintiff (who was represented by

12   counsel) and vocational and medical experts on April 22, 2013.  (AR 74-93).

13        On June 14, 2013, the ALJ determined that plaintiff was not disabled

14   through the date of the decision.  (AR 16-25).  Specifically, the ALJ found:

15   (1) plaintiff suffered from the following severe impairments:  degenerative disc

16   disease of the lumbar spine, hypertension, non-insulin dependent diabetes without

17   peripheral neuropathy, status post left knee surgery, and knee arthritis (AR 18) and

18   a nonsevere mental impairment of mood disorder and/or depressive disorder (AR

19   19); (2) plaintiff's impairments, considered singly or in combination, did not meet

20   or medically equal a listed impairment (AR 20); (3) plaintiff retained the residual

21   functional capacity to perform the full range of medium work (20 C.F.R.

22   §§ 404.1567(c), 416.967(c)) (AR 20); (4) plaintiff could perform his past relevant

23   work as a bus driver and security guard (AR 24-25); and (5) plaintiff's allegations

24   regarding the intensity, persistence, and limiting effects of his subjective

25   symptoms were not entirely credible (AR 21).

26        The Appeals Council denied plaintiff's application for review.  (AR 1).

27   ///

28   ///

## III.   APPLICABLE LEGAL STANDARDS

### A.   Sequential Evaluation Process

To qualify for disability benefits, a claimant must show that the claimant is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." Molina v. Astrue, 674 F.3d 1104, 1110 (9th Cir. 2012) (quoting 42 U.S.C. § 423(d)(1)(A)) (internal quotation marks omitted).  The impairment must render the claimant incapable of performing the work the claimant previously performed and incapable of performing any other substantial gainful employment that exists in the national economy.  Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 42 U.S.C. § 423(d)(2)(A)).

In assessing whether a claimant is disabled, an ALJ is to follow a five-step sequential evaluation process:

(1)     Is the claimant presently engaged in substantial gainful activity?  If so, the claimant is not disabled.  If not, proceed to step two.

(2)     Is the claimant's alleged impairment sufficiently severe to limit the claimant's ability to work?  If not, the claimant is not disabled.  If so, proceed to step three.

(3)     Does the claimant's impairment, or combination of impairments, meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1?  If so, the claimant is disabled.  If not, proceed to step four.

(4)     Does the claimant possess the residual functional capacity to perform claimant's past relevant work?  If so, the claimant is not disabled.  If not, proceed to step five.

(5)     Does the claimant's residual functional capacity, when considered with the claimant's age, education, and work

3

1    experience, allow the claimant to adjust to other work that

2    exists in significant numbers in the national economy?  If so,

3    the claimant is not disabled.  If not, the claimant is disabled.

4  Stout v. Commissioner, Social Security Administration, 454 F.3d 1050, 1052 (9th

5  Cir. 2006) (citing 20 C.F.R. §§ 404.1520, 416.920); see also Molina, 674 F.3d at

6  1110 (same).

7        The claimant has the burden of proof at steps one through four, and the

8  Commissioner has the burden of proof at step five.  Bustamante v. Massanari, 262

9  F.3d 949, 953-54 (9th Cir. 2001) (citing Tackett, 180 F.3d at 1098); see also Burch

10  v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) (claimant carries initial burden of

11  proving disability).

12        **B.    Standard of Review**

13        Pursuant to 42 U.S.C. section 405(g), a court may set aside a denial of

14  benefits only if it is not supported by substantial evidence or if it is based on legal

15  error.  Robbins v. Social Security Administration, 466 F.3d 880, 882 (9th Cir.

16  2006) (citing Flaten v. Secretary of Health & Human Services, 44 F.3d 1453, 1457

17  (9th Cir. 1995)).  Courts review only the reasons provided in the ALJ's decision,

18  and the decision may not be affirmed on a ground upon which the ALJ did not

19  rely.  See Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007) (citing Connett v.

20  Barnhart, 340 F.3d 871, 874 (9th Cir. 2003)).

21        Substantial evidence is "such relevant evidence as a reasonable mind might

22  accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389,

23  401 (1971) (citations and quotations omitted).  It is more than a mere scintilla but

24  less than a preponderance.  Robbins, 466 F.3d at 882 (citing Young v. Sullivan,

25  911 F.2d 180, 183 (9th Cir. 1990)).  To determine whether substantial evidence

26  supports a finding, a court must "'consider the record as a whole, weighing both

27  evidence that supports and evidence that detracts from the [Commissioner's]

28  conclusion.'"  Aukland v. Massanari, 257 F.3d 1033, 1035 (9th Cir. 2001)

4

1   (quoting <u>Penny v. Sullivan</u>, 2 F.3d 953, 956 (9th Cir. 1993)).  A denial of benefits

2   must be upheld if the evidence could reasonably support either affirming or

3   reversing the ALJ's decision.  <u>Robbins</u>, 466 F.3d at 882 (a court may not

4   substitute its judgment for that of the ALJ) (citing <u>Flaten</u>, 44 F.3d at 1457); <u>see</u>

5   <u>also</u> <u>Molina</u>, 674 F.3d at 1111 ("Even when the evidence is susceptible to more

6   than one rational interpretation, we must uphold the ALJ's findings if they are

7   supported by inferences reasonably drawn from the record.") (citation omitted).

8         Even when an ALJ's decision contains error, it must still be affirmed if the

9   error was harmless.  <u>Treichler v. Commissioner of Social Security Administration</u>,

10  775 F.3d 1090, 1099 (9th Cir. 2014).  An ALJ's error is harmless if (1) it was

11  inconsequential to the ultimate nondisability determination; or (2) the ALJ's path

12  may reasonably be discerned, even if the ALJ explains the ALJ's decision with

13  less than ideal clarity.  <u>Id.</u> (citation, quotation marks, and internal quotations

14  marks omitted).

15  **IV.   DISCUSSION**

16        Plaintiff contends that the ALJ failed properly to evaluate the opinions of

17  plaintiff's treating physician, Dr. Keith Somsanith.  (Plaintiff's Motion at 16-27).

18  The Court agrees.  Since the Court cannot find the ALJ's error harmless, a limited

19  remand is warranted.

20        **A.   Pertinent Law – Medical Opinion Evidence**

21        In Social Security cases, courts give varying degrees of deference to medical

22  opinions depending on the type of physician who provided them, namely "treating

23  physicians," "examining physicians," and "nonexamining physicians."  <u>Garrison v.</u>

24  <u>Colvin</u>, 759 F.3d 995, 1012 (9th Cir. 2014) (citation and quotation marks omitted).

25  A treating physician's opinion is generally given the most weight, and may be

26  "controlling" if it is "well-supported by medically acceptable clinical and

27  laboratory diagnostic techniques and is not inconsistent with the other substantial

28  evidence in [the claimant's] case record[.]"  20 C.F.R. §§ 404.1527(c)(2),

416.927(c)(2); <u>Orn</u>, 495 F.3d at 631 (citations and quotation marks omitted).  An examining, but non-treating physician's opinion is entitled to less weight than a treating physician's, but more weight than a nonexamining physician's opinion. <u>Garrison</u>, 759 F.3d at 1012 (citation omitted).

A treating physician's opinion, however, is not necessarily conclusive as to either a physical condition or the ultimate issue of disability.  <u>Magallanes v. Bowen</u>, 881 F.2d 747, 751 (9th Cir. 1989) (citation omitted).  An ALJ may reject the uncontroverted opinion of either a treating or examining physician by providing "clear and convincing reasons that are supported by substantial evidence" for doing so.  <u>Bayliss v. Barnhart</u>, 427 F.3d 1211, 1216 (9th Cir. 2005) (citation omitted). Where a treating or examining physician's opinion is contradicted by another doctor's opinion, an ALJ may reject such opinion only "by providing specific and legitimate reasons that are supported by substantial evidence." <u>Garrison</u>, 759 F.3d at 1012 (citation and footnote omitted).

An ALJ may provide "substantial evidence" for rejecting a medical opinion by "setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his [or her] interpretation thereof, and making findings." <u>Garrison</u>, 759 F.3d at 1012 (quoting <u>Reddick v. Chater</u>, 157 F.3d 715, 725 (9th Cir.1998) (quotation marks omitted)); <u>Thomas v. Barnhart</u>, 278 F.3d 947, 957 (9th Cir. 2002) (same) (citations omitted); <u>see also</u> <u>Magallanes</u>, 881 F.2d at 751, 755 (ALJ need not recite "magic words" to reject a treating physician opinion – court may draw specific and legitimate inferences from ALJ's opinion).  Nonetheless, an ALJ "must do more than offer [] conclusions."  <u>Embrey v. Bowen</u>, 849 F.2d 418, 421 (9th Cir. 1988).  "[The ALJ] must set forth his own interpretations and explain why they, rather than the [physician's], are correct."  <u>Id.</u> at 421-22.

**B.    Discussion**

In "Physical Capacities" forms dated January 11, 2012, and September 6, 2012, and a "Physical Residual Functional Capacity Assessment" form dated

1  November 13, 2012, Dr. Somsanith essentially opined that due to multiple physical
2  impairments and related limitations, plaintiff would be unable to perform even
3  sedentary work (collectively "Dr. Somsanith's Opinions").  (AR 423-24, 425-26,
4  427-34).  Plaintiff contends that the ALJ's reasons for rejecting Dr. Somsanith's
5  Opinions were inadequate.  (Plaintiff's Motion at 8-11).  The Court agrees.

6        The ALJ's broad and general finding that Dr. Somsanith's Opinions were
7  "not consistent with the objective medical evidence" (AR 24) was not sufficiently
8  specific.  For example, although the ALJ discussed the record medical evidence at
9  some length, the ALJ did not clearly provide his own interpretations of what
10 specific evidence was inconsistent with Dr. Somsanith's Opinions and explain why
11 the ALJ's views, rather than Dr. Somsanith's, were correct.  See Embrey, 849 F.2d
12 at 422-23 ("To say that medical opinions are not supported by sufficient objective
13 findings or are contrary to the preponderant conclusions mandated by the objective
14 findings does not achieve the level of specificity our prior cases have required,
15 even when the objective factors are listed seriatim.") (footnote omitted); see also
16 McAllister v. Sullivan, 888 F.2d 599, 602 (9th Cir. 1989) (ALJ improperly rejected
17 treating physician's opinion for "broad and vague" reasons that "[failed] to specify
18 why the ALJ felt the treating physician's opinion was flawed").

19       Moreover, it does not appear that the ALJ's decision accurately summarizes
20 the medical record as a whole.  See generally Gallant v. Heckler, 753 F.2d 1450,
21 1456 (9th Cir. 1984) (ALJ may not selectively rely on only the portions of record
22 which support non-disability) (citations omitted); Reddick, 157 F.3d at 722-23
23 (error for ALJ to paraphrase medical evidence in manner that is "not entirely
24 accurate regarding the content or tone of the record"); cf., e.g., Regennitter v.
25 Commissioner, 166 F.3d 1294, 1297 (9th Cir. 1999) (A "specific finding" that
26 consists of an "inaccurate characterization of the evidence" cannot support ALJ's
27 decision); Lesko v. Shalala, 1995 WL 263995 *7 (E.D.N.Y. Jan. 5, 1995)
28 ("inaccurate characterizations of the Plaintiff's medical record" found to constitute

7

reversible error).  For example, the ALJ stated that Dr. Somsanith's treatment records for plaintiff from April 2011 "show [] the [plaintiff] reported he was slightly better."  (AR 21) (citing Exhibit 2F at 3 [AR 333]).  The referenced medical record, however, actually reflects that plaintiff's symptoms were "slightly better" only "for [the] first few days" after taking a Prednisone medication pack, but then "return[ed]" once the medication series was used up.  (AR 333).  The ALJ also indicated that "records from May and June 2011" show that treatment for plaintiff's "lumbar pain, diabetes and hypertension" in general "was conservative, consisting of medications, follow up visits, and referral for physical therapy."  (AR 21) (citing Exhibit 2F at 2 [AR 332]).  The single progress note from May 9, 2011 the ALJ cited, however, does not reference any treatment provided in June 2011, and notes that, in addition to the treatment referenced by the ALJ, plaintiff may have also been prescribed a "back brace."  (AR 332).

        To the extent the ALJ found that plaintiff's limitations could not have been as severe as Dr. Somsanith opined given the "conservative" level of plaintiff's treatment (AR 21-24) – substantial evidence does not support the ALJ's decision. For example, with respect to plaintiff's medication, records reflect, in part, that (1) in May 9, 2011, plaintiff experienced only "10% relief of back pain" from his medication (AR 332); (2) in July 11, 2011, despite medication, plaintiff's lower extremity was still weak and "ke[pt] getting more weak" with lower back spasms (AR 417); (3) in February 27, 2012 plaintiff still had "difficulty [with activities of daily living]" despite "moderate control" of his back pain (AR 413); and (4) in May 17, 2012 plaintiff's back pain was "still poorly controlled" by medication (AR 403).  An August 13, 2012 report of a Neurology assessment said medical records documented "[n]o improvement [in plaintiff's condition] with muscle relaxants, NSAIDs, prednisone. . . ."  (AR 490).

        Similarly, substantial evidence does not, as the ALJ suggested, reflect that plaintiff gained much relief from physical therapy.  As the ALJ points out, a

1    September 14, 2012 progress note did state that physical therapy was "helping."[1]

2    (AR 22) (citing Exhibit 10F at 1 [AR 401]).  Nonetheless, a March 12, 2013

3    "discharge summary" reflects that plaintiff had reached two short-term physical

4    therapy goals, but in the end plaintiff's "back pain [had not] changed" and plaintiff

5    "continue[d] to have significant low back pain" despite physical therapy.  (AR 475-

6    76).  The ALJ found that "despite reports of pain, stiffness and difficulty with

7    posture," plaintiff had "demonstrate[d] independence with his home exercises."

8    (AR 23) (citing Exhibit 14F at 33 [AR 476]).  Plaintiff's independent compliance

9    with the exercise routine he was prescribed, however, is not substantial evidence

10   that plaintiff experienced any meaningful improvement through physical therapy,

11   especially since the "discharge summary" cited by the ALJ (and also noted above)

12   shows that plaintiff was discharged because he had reached a "plateau" in his

13   progress in physical therapy, not because his pain had necessarily been adequately

14   addressed.  (AR 475-76).  Indeed, a March 27, 2013 orthopedic progress note

15   reflects that plaintiff had experienced "no relief" from physical therapy (AR 478),

16   and an April 17, 2013 progress note reflects that plaintiff had "[no] relief" after six

17   to seven physical therapy sessions.  (AR 447).

18       The ALJ also characterized plaintiff's hypertension treatment as "routine[]"

19   and "conservative," pointing to two occasions (*i.e.,* on May 9, 2011 and June 19,

20   2012) when plaintiff's hypertension was reportedly under "good control."  (AR 21,

21   22) (citing Exhibits 2F at 2 [AR 332], 10F at 2 [AR 402], 10F at 16-17 [AR 416-

22   17]).  Other progress notes, however, documented one occasion (*i.e.*, on July 11,

23   2011) when control of plaintiff's hypertension was only "fair" (AR 417), and three

24

25       [1]The ALJ also stated that "in September 2012, the claimant underwent physical therapy,
26   where it was noted that he made moderate progress despite ongoing lower back pain."  (AR 23)
     (citing Exhibit 14F at 31 [AR 474]).  The cited progress note, however, does not appear to
27   address plaintiff's progress in physical therapy at all, but instead simply documents information
     plaintiff was given during a "Physical Therapy Back Class" regarding how to "improve
28   functional mobility and decrease pain. . . ."  (AR 474).

occasions when plaintiff's hypertension was reportedly poorly controlled (*i.e.*, on October 13, 2011, January 5, 2012, and May 17, 2012) (AR 403, 415-16).

The ALJ also gave "little weight" to Dr. Somsanith's Opinions, in part, based on the ALJ's conclusion that Dr. Somsanith's treatment plan for plaintiff was "relatively conservative." (AR 24). The medical record, however, reflects that, just for his back pain, plaintiff was prescribed multiple medications (*i.e.*, Flexeril, Feldene (NSAID), Tylenol, Prednisone, and possibly Codeine) as well as physical therapy and possibly a back brace, and plaintiff was referred for orthopaedic and neurological consultations. (AR 332-36, 343, 401-03, 413-17, 447, 449-53, 490-92). Even so, the ALJ did not identify any medical opinion which characterized plaintiff's treatment by Dr. Somsanith as "conservative." An ALJ's lay assessment that a course of treatment was conservative is not a specific or legitimate reason for rejecting the opinions of a treating physician. See, e.g., Vallandingham v. Colvin, 2015 WL 1467189, *4 (C.D. Cal. Mar. 26, 2015) ("Because no medical expert characterized [plaintiff's] treatment as conservative . . . , the Court cannot find that the ALJ's lay analysis of plaintiff's treatment as conservative was overwhelmingly compelling.") (citations omitted); cf., e.g., Tahmas v. Colvin, 2015 WL 3658581, *6 (C.D. Cal. June 11, 2015) ("[T]o the extent that the ALJ was implicitly making a lay determination that plaintiff's treatment was conservative, the Court finds that this [] was not a legally sufficient basis to reject plaintiff's subjective symptom testimony because no medical professional characterized plaintiff's treatment as conservative or as incommensurate with plaintiff's subjective symptom complaints."); see generally Day v. Weinberger, 522 F.2d 1154, 1156 (9th Cir. 1975) (an ALJ is not qualified as a medical expert); Tagger v. Astrue, 536 F. Supp. 2d 1170, 1181 (C.D. Cal. 2008) ("ALJ's determination or finding must be supported by medical evidence, particularly the opinion of a treating or an examining physician.") (citations and internal quotation marks omitted); Winters v. Barnhart, 2003 WL 22384784, *6 (N.D. Cal. Oct. 15, 2003) ("The ALJ is not

10

1  allowed to use his own medical judgment in lieu of that of a medical expert.")
2  (citations omitted).

3      The ALJ also rejected Dr. Somsanith's Opinions as "not consistent" with the
4  opinions of Dr. Seung Lim (an examining physician), and Dr. John Morse (the
5  testifying medical expert).  (AR 24; see AR 342-46 [July 27, 2011 report of
6  Internal Medicine Consultation by Dr. Lim]; AR 78-79 [April 22, 2013 hearing
7  testimony of Dr. Morse]).  Nonetheless, the fact that Dr. Somsanith's Opinions
8  were contradicted by other physicians, without more, is not a specific or legitimate
9  reason for rejecting such opinions.  See Garrison, 759 F.3d at 1012-13 ("ALJ errs
10  when he rejects a medical opinion or assigns it little weight while doing nothing
11  more than ignoring it, asserting without explanation that another medical opinion is
12  more persuasive, or criticizing it with boilerplate language that fails to offer a
13  substantive basis for his conclusion.") (citation omitted).

14      The Court cannot find that the ALJ's above-referenced errors were harmless.
15  As noted above, Dr. Somsanith essentially opined that plaintiff had multiple
16  limitations which precluded plaintiff from performing even sedentary work.  (AR
17  423-24, 425-26, 427-34).  Since the ALJ found that plaintiff was not disabled at
18  step four because plaintiff was still able to perform his past relevant work – which
19  was, at the least, at the light exertion level (AR 24-25) – the Court cannot
20  confidently conclude that the ALJ's residual functional capacity assessment for
21  plaintiff, and in turn, his determination at step four that plaintiff was capable of
22  performing past relevant work, would have been the same absent such error.
23  ///
24  ///
25  ///
26  ///
27  ///
28  ///

11

**V.    CONCLUSION**[2]

For the foregoing reasons, the decision of the Commissioner of Social Security is reversed in part, and this matter is remanded for further administrative action consistent with this Opinion.[3]

LET JUDGMENT BE ENTERED ACCORDINGLY.

DATED:   March 9, 2016

                                      /s/
                        Honorable Jacqueline Chooljian
                        UNITED STATES MAGISTRATE JUDGE

_____

[2]The Court need not, and has not adjudicated plaintiff's other challenges to the ALJ's decision, except insofar as to determine that a reversal and remand for immediate payment of benefits would not be appropriate.

[3]When a court reverses an administrative determination, "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." Immigration & Naturalization Service v. Ventura, 537 U.S. 12, 16 (2002) (citations and quotations omitted).  Remand is proper where, as here, "additional proceedings can remedy defects in the original administrative proceeding. . . ." Garrison, 759 F.3d at 1019 (citation and internal quotation marks omitted).